# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**
May 25, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**KATHERINE J. TROUT,**
**Claimant Below, Petitioner**

**vs.)    No. 15-0730** (BOR Appeal No. 2050071)
(Claim No. 2010136561)

**GREENBRIER COUNTY SCHOOLS,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Katherine J. Trout, by Reginald D. Henry, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Greenbrier County Schools, by Matthew L. Williams, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated July 1, 2015, in which the Board affirmed a December 15, 2014, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's June 20, 2013, decision which denied a total knee replacement, an orthopedic consultation, and periodic follow-up with Stephen Vess, D.O. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Trout, a teacher, was injured in the course of her employment on May 17, 2010, when she slipped and fell on a wet floor. A right knee MRI taken that day revealed a ruptured patellar tendon. It also showed mild to moderate degenerative changes, some bone edema, and a cyst. The claim was held compensable for non-traumatic patellar tear. Surgery was authorized and performed by Dr. Vess on May 18, 2010.

1

Ms. Trout has a history of right knee problems prior to the compensable injury. On December 6, 2006, Dr. Vess stated in a treatment note that she injured her right knee when she slipped and fell. She had significant pain and tightness in the knee. She also had some right ankle discoloration and episodic tenderness in the right knee that was exacerbated with activity. It was noted that she had undergone patella realignment surgery on her right knee as a teenager. Dr. Vess stated that x-rays showed degenerative changes in the right knee. He diagnosed contusion of the anterior aspect of the right knee with pre-patellar bursitis.

On January 5, 2011, Prasadarao Mukkamala, M.D., performed an independent medical evaluation in which he noted that Ms. Trout underwent right knee surgery at age fourteen for a dislocated kneecap. He stated that she underwent surgery for the compensable injury in this case with excellent results. He found she had reached maximum medical improvement for the compensable injury and requires no further treatment for it. He opined that right knee injections, which she was receiving at the time, were to treat pre-existing degenerative changes. He recommended she return to work as her knee was completely stable.

In a February 1, 2011, letter, Dr. Vess stated that he disagreed with Dr. Mukkamala's evaluation. Dr. Vess asserted that he had treated Ms. Trout for quite some time for other issues, and she had no need for corticosteroid injections prior to the compensable injury. He opined that it is common for someone to have pre-existing conditions that are asymptomatic until they sustain an injury. He therefore directly related Ms. Trout's right knee pain to her compensable injury. He further opined that she would require monitoring and medication, occasional injections, and possibly a total joint replacement.

Kendall Wilson, D.O., performed an evaluation on October 18, 2011, in which he diagnosed status post patellar tendon rupture repair, chronic knee pain, and arthritis. He opined that Ms. Trout had reached maximum medical improvement; however, he stated that she was permanently and totally disabled and was unable to engage in substantial employment. On May 2, 2012, Paul Bachwitt, M.D., opined in an independent medical evaluation that Ms. Trout had reached maximum medical improvement. He believed the compensable injury was limited to a tear of the patellar tendon, which was successfully repaired. He found that the degenerative changes were pre-existing.

Dr. Vess asserted in a May 10, 2012, letter that some of Ms. Trout's symptoms are related to her arthritis; however, the arthritis did not become active until the compensable injury. He therefore opined that her current pain is the result of the compensable injury. A right knee x-ray taken on November 14, 2012, showed medial joint space narrowing consistent with significant osteoarthritis. It was noted that there were severe arthritic changes in the patellar femoral joint.

Dr. Mukkamala completed a physician review on April 23, 2013, in which he recommended denying a request for orthopedic consultation, authorization for office visits with Dr. Vess, and a reopening request. He stated that Dr. Vess was considering a total knee replacement. Dr. Mukkamala opined that the surgery would be to treat non-compensable degenerative changes and therefore should not be authorized. He also found that Ms. Trout

continues to treat with Dr. Vess due to her non-compensable, pre-existing degenerative changes. He therefore also recommended that authorization for visits with him be denied. Finally, Dr. Mukkamala determined that Ms. Trout required no further treatment for the compensable injury, and the claim should therefore not be reopened. The claims administrator denied a total knee replacement, an orthopedic consultation, and periodic follow-up with Dr. Vess on June 20, 2013.

Luis Farrow, M.D., saw Ms. Trout for a second opinion on July 2, 2013. He stated that she has severe osteoarthritis in her right knee patellofemoral joint and had no knee pain prior to the compensable injury. Dr. Farrow therefore opined that the patellar tendon rupture and subsequent surgeries exacerbated the knee arthritis. He recommended arthroplasty. Dr. Vess agreed in a July 11, 2013, treatment note. He noted significant arthritic changes in the knee. He opined that though Ms. Trout has arthritis, it was not symptomatic until the compensable injury and therefore, any residual pain she now has is a result of the compensable injury. He opined she would likely need a total knee replacement. H.R. Fleschner, D.C.C.R.P., agreed with the assessment on March 17, 2014. He opined that continued cortisone injections in the right knee will result in more osseous and cartilage destructions. They also have a negative impact on blood sugar. He asserted that a knee replacement would improve her quality of life and be a better option than continued injections.

On April 8, 2014, ChaunFang Jin, M.D., performed an independent medical evaluation in which she diagnosed history of patellar tendon rupture, status post-surgical repair and pre-existing, advanced degenerative arthritis. Dr. Jin noted that Ms. Trout's patellar problems began when she was a teenager and required surgery. She also noted a right knee injury in 2006. At that time, an x-ray showed arthritic changes of the knee. Dr. Jin therefore concluded that the degenerative arthritis was pre-existing. She stated that the compensable injury did not cause or accelerate the degeneration of the knee. She further opined that even though the ruptured patella tendon is causally related to the compensable injury, it would not have progressed to severe degenerative arthritis of the knee requiring a full knee replacement. Dr. Jin asserted that the nature of the injury would not be expected to have aggravated the underlying degenerative arthritis of the knee. Ms. Trout was found to be at maximum medical improvement.

Yogesh Chand, M.D., disagreed in a June 3, 2014, independent medical evaluation. He diagnosed post-traumatic rupture of the patella tendon with good repair, patellofemoral injury of the right knee, and underlying sprain problem of the right knee. Dr. Chand opined that all of these conditions were the result of the compensable injury. He asserted that the amount of arthritis in the knee did not result solely from age or genetic pre-disposition. It was his opinion that Ms. Trout required a total knee replacement as a direct result of the compensable injury. He also thought that follow-up visits and additional treatment were necessary.

On August 11, 2014, Saghir Mir, M.D., noted in an independent medical evaluation that Ms. Trout underwent right knee surgery at age fourteen. He stated that following such a surgery, patients almost always eventually develop chondromalacia of the patellofemoral joint followed by progressive osteoarthritis. He noted that Ms. Trout also fell in 1997 and tore her meniscus in her right knee. In 2006, she slipped and again injured her right knee. X-rays taken at that time showed pre-existing mild to moderate osteoarthritis. After an examination, Dr. Mir concluded

that Ms. Trout had reached maximum medical improvement for the compensable injury. Dr. Mir stated that she had naturally occurring osteoarthritis in both knees, which was identical on x-rays. He opined that she did not need additional surgery for the compensable injury.

The Office of Judges affirmed the claims administrator's denial of a total knee replacement, an orthopedic consultation, and periodic follow-up with Dr. Vess in its December 15, 2014, Order. It found that as early as 2011, Dr. Mukkamala opined that if Ms. Trout needed a total knee replacement, it would not be related to the compensable injury. His opinion was supported by Dr. Bachwitt. The Office of Judges found that both doctors found osteoarthritis in both knees and several other physicians documented bilateral knee issues. Additionally, she has a history of right knee injuries including surgery. The Office of Judges noted that there were degenerative changes present on a 2006 x-ray, as well as on x-ray and MRI taken immediately after the compensable injury. The Office of Judges found that Dr. Mir opined that surgical repair of the patellar tendon would not result in osteoarthritis or aggravate pre-existing arthritis. Dr. Mir's finding was supported by Dr. Jin's opinion that the compensable injury did not accelerate or cause the degenerative process in the right knee. The Office of Judges concluded that medical evidence establishes that Ms. Trout's right knee issues began long before the compensable injury and now require a total knee replacement that is not related to the compensable injury. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on July 1, 2015.

After review, we agree with the reasoning of the Office of Judges and conclusions of the Board of Review. While Ms. Trout did injure her right knee in the course of her employment, the requested treatment is not reasonably required and medically necessary to treat the compensable injury. She has a long history of right knee problems, including prior injuries, surgery, and treatment. The Board of Review was correct to affirm the Office of Judge's well-reasoned decision.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  May 25, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**DISSENTING:**
Justice Margaret L. Workman

4